MAURICE COATES *v.* CITY OF EVANSVILLE.

[No. 470A59. Filed October 14, 1971. Rehearing denied November 15, 1971. Transfer denied April 5, 1972.]

Howard P. Trockman, James F. Flynn, Trockman, Lloyd, Flynn & Swain, of counsel, of Evansville, for appellant.

Robert S. Matthews, Ronald Warrum, Jerry P. Baugh, Toby D. Shaw, of Evansville, Mark P. Lockwood, of Princeton, for appellee.

STATON, J.—This is an appeal from the Gibson Circuit Court. The judgment being appealed found against the appellant-plaintiff on both Paragraph One and Paragraph Two of his complaint which are summarized as follows:

> Paragraph One sought $20,000.00 in damages for Defendant-Appellee's failure to reinstate Plaintiff-Appellant as a fireman. His conviction had been reversed by the Supreme Court on September 19, 1967, but reinstatement action was not taken until March 9, 1968.

> Paragraph Two incorporated by reference much of Paragraph One and in addition sought to have restored Plaintiff-Appellant's seniority rights and certain benefits flowing therefrom.

The record of this cause discloses that Mr. Maurice Coates was first actively engaged as a fireman for the city of Evansville on November 13, 1959. He received a notice from Fire Chief Fred Hougland dated November 6, 1964 which reads as follows:

> "You are hereby notified of your suspension from the Fire Department of the City of Evansville, as of this date, because of the filing of a criminal affidavit against you charging possession of stolen property.

> Your suspension will be reported to the Board of Public Safety which Board will take further action thereon."

On the same date November 6, 1964, Fire Chief Hougland sent a copy of the above notice with a covering letter to the

Board of Safety which, omitting the formal parts thereof, reads as follows:

> "I am attaching hereto copy of notice of suspension this day served upon Maurice Coates, because of the filing of an affidavit against him for possession of stolen property. It is my recommendation that this suspension be continued until the trial of the criminal proceedings."

Thereafter, on November 17, 1964, Maurice Coates made a written request to the Board of Safety for a six month leave of absence without pay. This request, omitting the formal parts thereof, reads as follows:

> "I, Maurice Coates, hereby request that I be granted a six (6) month leave of absence without pay, from my duties as a member of the Evansville Fire Department, Evansville, Indiana, said leave of absence to begin at the expiration of the twenty-nine (29) day suspension imposed upon me by Fred Hougland, Chief of the Evansville Fire Department on the 6th day of November, 1964."

The minutes of the Board of Safety show that approval of this request was recommended by the City Attorney:

> "On the recommendation of the City Attorney, and on motion duly made and unanimously carried, the Board approved the request of Maurice Coates and granted a six months leave of absence, without pay, from the Evansville Fire Department, effective at the expiration of the Twenty-nine (29) day suspension imposed upon him by Fred Hougland, Chief of the Fire Department on the 6th day of November, 1964."

Again on May 24, 1965, fireman Maurice Coates requested another leave of absence without pay for a period of ninety days, which was approved by the Board of Safety in their minutes dated May 26, 1965. This leave of absence was to commence on June 5, 1965 or upon the expiration upon the six (6) month leave of absence. It appears that this second leave of absence would have expired eleven (11) days prior to the hearing held on September 17, 1965. These eleven (11)

days are not discussed by the parties and we do not know whether or not the appellant-plaintiff was absent without leave, on leave of absence without pay or that the eleven (11) days extension was granted by the Board or what status may be attributed or assigned to this period of time.

Fire Chief Fred Hougland submitted charges to the Board of Safety on August 31, 1965, which were made a part of the record of the Board of Safety. These charges omitting the formal parts thereof read as follows:

"I submit herewith charges against Fireman Maurice Coates, growing out of his conduct described as follows:

1. I charge that Fireman Maurice Coates was convicted of a criminal offense in the Circuit Court of Vanderburgh County on the 24th day of June, 1965, in violation of Section 160 of Chapter 129 of the Acts of the General Assembly of the State of Indiana, 1905, as amended (Burns' 48-6105), in this: that on or about the 24th day of June, 1965, at Evansville, Indiana, he was convicted of the crime of 'theft of stolen property.' "

The transcript shows the minutes of the meeting held by the Board of Public Safety on September 17, 1965. The appellant-plaintiff was represented by his attorney, Marion Rice, and the city of Evansville was represented by Jerome E. Salm. A record was made at this hearing which substantiated the charges made by the Fire Chief. The appellant-plaintiff's attorney, Marion Rice, advised the Safety Board of the status of appellant's appeal of his conviction. At this state of the proceedings, the motion for new trial had been taken under advisement by the court. The only motion or recommendation upon which any action was taken at this meeting appears on page 89 of the transcript wherein Mr. Salm states the following:

"In accordance with the procedure that was taken by the board in a similar case within the last six months, the city attorney recommends that fireman Coates be suspended without pay pending the determination of his appeal."

Mr. Kello states:

"It's an open suspension then, in other words:

Mr. Rice replies:

"Yes, and we would join in that recommendation—we will request that the board act in compliance with the recommendation of the city attorney.

Mr. Salm states:

"I think this board will then hold another hearing after the appeal is disposed of.

\* \* \*

Motion was carried and hearing was adjourned."

On September 19, 1967, the Supreme Court of Indiana reversed the appellant-plaintiff's conviction in an opinion written by Chief Justice Hunter and handed down on the above mentioned date. The opinion was published on October 6, 1967 in 11 Indiana Decisions 178. The opinion was later certified to the clerk of the Vanderburgh Circuit Court on the 15th day of January, 1968. A letter dated February 15, 1968, addressed to the Board of Public Safety over the signature of Jack N. VanStone, attorney for the appellant-plaintiff, excluding therefrom the formal parts, is as follows:

"On August 31, 1965, Fred Hougland, Chief of the Fire Department brought charges against Fireman, Maurice Coates; that he was on the 24th day of June, 1965, convicted of the crime of 'theft of stolen property.'

"On September 17, 1965, the Board of Public Safety held a meeting wherein this charge was heard and wherein 'the Board continued the suspension of Fireman, Maurice Coates, without pay, pending the disposition of his appeal.'

"You are hereby notified that on the 19th day of September, 1967, the Supreme Court of the State of Indiana reversed the conviction of Maurice Coates, a copy of said Opinion reversing said conviction is attached hereto and made a part hereof. That on the 16th day of January, 1968, said Opinion of the Supreme Court was certified and received by the Clerk of the Vanderburgh Circuit Court. That on the 8th day of February, 1968, John Carroll, Special Judge of the Vanderburgh Circuit Court entered an Order granting the Defendant's Motion For a Directed

Verdict and discharging the said Maurice Coates, a copy of said Order is attached hereto and made a part hereof.

"Therefore, on behalf of Fireman Maurice Coates, we respectfully request that the Board receive as a part of the record in his case the attached exhibits. That Fireman Maurice Coates, be found not guilty of the charges brought against him on August 31, 1965 by Fred Hougland, Chief of the Fire Department, and for all other further and proper relief."

The above letter is the first notice from the appellant-plaintiff to the Board of Safety that he desired any action taken on his reinstatement.

Thereafter, on March 5, 1968, Maurice Coates and his attorney, Jack N. VanStone, attended a hearing of the Board of Safety where the minutes reveal that the facts set forth in the above letter were placed of record and were made a part of the minutes of the Board. After reciting substantially the context of the letter set forth above, the minutes of the Board of Safety show the following:

"After the Board members together with the City Attorney went into a short private executive session, on the recommendation of the City Attorney and on Motion duly made and unanimously carried, the Board REINSTATED MAURICE COATES TO THE EVANSVILLE FIRE DEPARTMENT, EFFECTIVE MARCH 9, 1968, noting that no back pay was being authorized during the period of suspension and the period of time during his suspension would be recorded as a 'gap' in his employment record."

The appellant-plaintiff's only assignment of error is "the court erred in overruling appellant's motion for a new trial." For both legal paragraphs the motion for new trial urged the following errors:

"1. The decision of the Court is not sustained by sufficient evidence."
"2. The decision of the court is contrary to law."

The appellant-plaintiff's first specification of error as to both legal paragraphs presents no question for review, since

this is an appeal from a negative decision of the Gibson Circuit Court. *Mitchell v. Lawson* (1969), 145 Ind. App. 141, 250 N.E. 2d 259, 18 Ind. Dec. 257; *Mobley v. City of Evansville* (1960), 130 Ind. App. 575, 167 N.E. 2d 473.

Upon the second specification of error, we find that the decision of the Gibson Circuit Court must be reversed.

The appellant-plaintiff contends that the Fire Chief has no power to suspend a fireman under the statute. He further contends that the suspension of Fire Chief Fred Hougland on November 6th is void *ab initio*. In this contention, the appellant-plaintiff is correct. The statute, IC 1971, 18-1-11-3, Ind. Ann. Stat., § 48-6105 (Burns 1963), grants the power to suspend *only* to the "Commissioners of Public Safety." Under the statute a fireman may only be suspended after written notice and hearing before the Commissioners. An examination of the aforementioned statute clearly shows that the Commissioners shall have the power to punish a fireman "by reprimand, forfeiture, suspension without pay, dismissal, or by reducing him or her to a lower grade and pay." "On the conviction in any court . . . of any criminal offense . . ." the Board of Safety has the power to suspend. Additional grounds for suspension or other disciplinary action set forth in the statute are:

1. Guilty of neglect of duty;
2. Violation of rules;
3. Neglect or disobedience of orders;
4. Of incapacity;
5. Absence without leave;
6. Immoral conduct;
7. Conduct injurious to the public peace or welfare;
8. Conduct unbecoming an officer;
9. Or other breach of discipline.

There is nothing in the statute which suggests that the chief shall have the power to suspend a member of the fire

department for thirty days without a notice or hearing or that the Fire Chief or Commissioners of Safety shall have the power to suspend a member of the fire department "because of the filing of a criminal affidavit against you charging possession of stolen property." The latter quoted phrase is from the notice sent to the appellant-plaintiff by Fire Chief Fred Hougland. The statute has set forth very general as well as specific categories which constitute charges and grounds for suspension. A specific charge within one of the statutory categories must be set forth in any notice to a member of the fire department so that he may know why such action is being taken against him. To lessen political interference and pressures within the fire department, the statute has specifically set forth those categories which constitute the charges against a member of the fire department. All other charges outside those expressly stated in the statute are null and void and have no force. The attempted "suspension" for the twenty-nine days immediately preceding the granting of appellant-plaintiff's request for a six months leave of absence without pay is null and void.

The six months leave of absence and the ninety-day leave of absence without pay requested by the appellant-plaintiff cannot be considered as a period for which back salary should be paid by the city. Appellant-plaintiff chose not to remain within the corporate limits of the city of Evansville pending his jury trial on the affidavit in the Vanderburgh Circuit Court. He went to live in Chicago with his brother and sister for economic reasons or better job opportunities. Therefore, the Gibson Circuit Court was correct in not considering the period of time from November 17, 1964 to and including September 17, 1965. Apart from any contractual considerations, appellant-plaintiff's seniority benefits would continue to accumulate. *State* v. *Akron Civil Service Commission* (1953), 95 Ohio App. 385, 120 N. E. 2d 127.

The suspension entered upon the Board's records on September 17, 1965 is a valid suspension. This suspension is

supported by a statutory ground: "On the conviction in any court of any member of said fire or police force . . . of any criminal offense, . . ." A charge was made and notice of hearing given as provided by statute. The minutes of the Board on September 17, 1965 indicate that the suspension was to continue without pay pending the determination of appellant-plaintiff's appeal. This was a proper action to take by the Board after the record had been made by Mr. Salm, Attorney for the city of Evansville, showing a conviction in the Vanderburgh Circuit Court of the appellant-plaintiff. There were no additional charges made or entered upon the record to support the suspension without pay, other than the conviction of the appellant-plaintiff. Therefore, as the minutes of the Board clearly indicate, the suspension itself and the consequences flowing therefrom depended upon the validity of the conviction. Presumption of innocence does not follow the defendant on appeal after conviction. *State* v. *Redman* (1915), 183 Ind. 332, 109 N. E. 184; see also 71 A. L. R. 2d 601. The policy and intent of the legislature is explicitly set forth in IC 1971, 18-1-11-3, Ind. Ann. Stat., § 48-6105 (Burns 1963). The legislature intended that a fireman who "is suspended . . . for any period in excess of thirty (30) days, shall have the right to appeal to the circuit or superior court of the county. . . ." This right of appeal under the statute must be taken ". . . within thirty (30) days after the date . . ." that the Safety Board renders its decision to suspend. Once appealed to the circuit or superior court ". . . such appeal shall take precedence over other pending litigation, and be tried and determined by the court at as early a date as practical." In other words, such appeal should be expedited over all other court litigation then pending. If the decision is reversed by the court, the Board of Safety ". . . shall pay to the party entitled thereto any salary or wages withheld from such party pending such appeal and to which he or she may be entitled under the judgment of the court." Briefly summarizing: the policy and intent of the legislature is to

give firemen a right to appeal only from those decisions of the Board of Safety which result in dismissal or suspension. Such decisions should be of such a final and conclusive nature that the appeal to the circuit or superior court of the county can be handled in a most expeditous manner. If the Safety Board's decision is reversed by the court, the firemen are to receive retroactively all wages accumulated during the pending appeal ". . . and to which he or she may be entitled under the judgment of said court."

The decision of the Safety Board in the present case was not of such a conclusive or final nature that a meaningful appeal could have been taken by the appellant-plaintiff. The minutes of the Board of Safety indicate that this was a "wait and see" suspension. Mr. Salm stated: "I think this Board will then hold another hearing after the appeal is disposed of." Both the Safety Board and the appellant-plaintiff recognized that no further determination could be made until the appeal of the criminal conviction was finalized. There is nothing in the statute which would indicate that the legislature intended that the fireman prosecute two appeals at the same time. The Safety Board intended to continue the hearing on the suspension until a future time and this is exactly what the Safety Board did on March 5, 1968. No period of suspension had ever been decided upon by the Board of Safety. This shows conclusively that the Safety Board did not consider the matter of appellant-plaintiff's suspension final. At this hearing the Board reversed the suspension itself without an appeal being taken and reinstated the appellant-plaintiff. When the Safety Board reinstated the appellant-plaintiff and made its final decision, it denied him the right to appeal under the statute from the intervening suspension. The statute provides that a fireman may appeal ". . . from such decision of dismissal or suspension by said Board, but *shall not have such right or appeal from any other decision."* (Our emphasis.) However, this action by the Board of Safety does not leave the appellant-plaintiff without a remedy. He

may pursue his common law remedy as he has done in this instance.

It is not the policy or intent of the legislature to permit the Board of Safety to suspend a fireman for being convicted of any criminal offense and then permit the Board to deny the right of appeal for such suspension. To hold otherwise, would give the Board of Safety a license to circumvent and frustrate the clear intent and policy of the legislature. *City of Peru* v. *State ex rel. McGuire* (1936), 210 Ind. 668, 199 N. E. 151.

In the *City of Peru, supra,* a fireman was dismissed without a hearing as provided by the statute and thus denied his right of appeal. Recognizing that mandate does not lie in such a case, our Supreme Court held that "his remedy was an action against the city for breach of contract of employment."

We now address ourselves to the question of damages. The appellant-plaintiff brought a common law action for breach of contract. Only the following periods of time may be considered:

Time period—(1)    November 6, 1964 to December 6, 1964.
Time period—(2)    September 17, 1965 to March 9, 1968.

Appellant-plaintiff is entitled to that part of his back pay in the above periods which exceeds his earning and income in other occupations during these periods. *City of Evansville* v. *Maddox* (1940), 217 Ind. 39, 25 N. E. 2d 321; *City of Peru* v. *State ex rel. McGuire, supra.* The period of time comprising a six months and ninety-day leave of absence without pay should not be considered as we pointed out earlier in this opinion.

The stipulation by the parties appears to have taken into account the appellant-plaintiff's seniority rights and benefits without setting forth the basis or contractual factors which were taken into consideration. Although statutory provisions may be considered part of the contract, we find no statutory

enlightenment or matters presented in the record that would give us reason to discuss seniority further.

The judgment of the Gibson Circuit Court should be and the same is hereby reversed with instructions to grant the appellant-plaintiff's motion for new trial.

Hoffman, C. J., Sharp and White, JJ., concur.

NOTE.—Reported in 273 N. E. 2d 862.